IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| **TROY WILLIAMS,** | * |   |
| Plaintiff | * |   |
| v. | * | CIVIL NO.  JKB-10-2752 |
| **TERO TEK INT'L, INC.,** | * |   |
| Defendant | * |   |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

In this employment discrimination case, Plaintiff Troy Williams, an African American, alleged his former employer, Defendant Tero Tek International, Incorporated, demoted him and terminated his employment on the basis of race, color, and retaliation for engaging in protected activity and further alleged that Tero Tek discriminated against African Americans as to the company's policies on employee leave.  (Am. Compl., ECF No. 17.)[1]  Williams's suit is brought under Title VII, 42 U.S.C. § 2000e *et seq.*, and the civil rights statute, 42 U.S.C. § 1981.  Tero Tek has moved for summary judgment.  (ECF No. 45.)  The matter has been briefed (ECF Nos. 50, 51, 54), and no hearing is necessary, Local Rule 105.6.  The motion will be granted.

*I. Facts*

Tero Tek is a government contractor that has had a number of contracts at the U.S. Army Aberdeen Test Center ("ATC") in Maryland.  (Def.'s Mot. Summ. J., Doss Aff. ¶ 4, ECF No. 45.)  Jerry Doss, a Caucasian, is the largest shareholder of Tero Tek, having an ownership interest of 49 percent in the company.  Doss is in charge of Tero Tek's operations and has

---

[1] Williams's amended complaint included a count for breach of collective bargaining agreement, which was dismissed earlier in this proceeding.  (Order, Jun. 1, 2012, ECF No. 26.)  Only the discrimination counts remain in the case.

complete authority over personnel decisions. He is also the company's Facility Security Officer. (Pl.'s Opp., Ex. 2, Doss Dep. 7:10-12; 8:2-6; 10:18—11:21.)

Plaintiff Williams began his employment with Tero Tek as a journeyman welder sometime after July 1, 1999. On September 27, 2000, Doss promoted Williams to the position of welder assistant leader and gave him a pay increase. On July 1, 2005, Doss promoted Williams to experimental welder leader and gave him another pay increase. Besides Williams, Tero Tek also had Mark Lee, a Caucasian, and Mitch Tolbert, a Caucasian, in the position of experimental welder leaders. An employee in that position has supervision over experimental welders, journeyman welders, millwrights, and welder helpers and also has the responsibility for making job assignments and monitoring the work performed. (Doss Aff. ¶¶ 5-6, 9-10.)

All Tero Tek employees who work at ATC must obtain and maintain a secret security clearance from the United States Government. (Pl.'s Opp. Ex. 8, Def.'s Ans. Interrog. No. 5.) When Williams was hired by Tero Tek, he already possessed a secret clearance granted by the Defense Industrial Security Clearance Office ("DISCO"). His clearance was transferred to Tero Tek. In September 2002, Williams was due for a periodic reinvestigation, which is routinely performed every ten years. He completed a form SF 86, and DISCO upheld his clearance. (Doss Aff. ¶¶ 5, 8.)

Lisa Terry, a Caucasian, works for Tero Tek as an administrative assistant to Doss. She and Williams began dating around 2005 or 2006 and began living together in 2007. After their relationship deteriorated in 2009, they stopped living together. She complained that Williams was harassing her at work. (Doss Aff. ¶ 12.) The chief executive officer of Tero Tek, William R. Aldrich, sent a letter dated December 24, 2009, to Williams, ordering him to cease and desist and warning him of the possibility of suspension and removal from the installation if any further harassment were to occur. He also stated that the local police authorities had been notified.

(Def.'s Mot. Summ. J. Ex. 5, Aldrich Letter Dec. 24, 2009.)  Doss sent a letter to Terry on the same date, instructing her to block the windows between her office and Williams's office, to keep the doors locked, and to communicate with Williams only in writing that was channeled through Doss.  (*Id.* Doss Letter Dec. 24, 2009.)  Terry also obtained from the Harford County (Maryland) District Court on January 5, 2010, a peace order against Williams, based upon the court's finding by clear and convincing evidence that Williams had committed harassment against Terry.  The peace order was to remain effective until July 4, 2010.  (*Id.* Ex. 6, Final Peace Order.)

On January 20, 2010, Williams submitted a charge of employment discrimination to the Equal Employment Opportunity Commission ("EEOC"), claiming race, sex, age, and color discrimination and retaliation.  The two acts that he indicated were discriminatory were the cease-and-desist letter and Terry's application for a peace order.  Lee and Terry were listed by him as the comparators who received better treatment, although the allegedly more favorable treatment described by Williams did not relate to cease-and-desist letters or applications for peace orders.  Williams also listed Ellis Walker and Alvin Carson as having received worse treatment than he, but, again, the treatment described did not relate to either cease-and-desist letters or applications for peace orders.  Instead, the differences in treatment included such things as "fewer employees," "provided government vehicle," and "abuse of government time" for Lee and Terry and "unfair selection of jobs & overtime" and "union complaint" for Walker and Carson.  (Pl.'s Opp. Ex. 5, EEOC doc., ECF No. 50.)

On February 2, 2010, the EEOC sent a notice of charge of discrimination to

> Bill Aldrich
> President
> Tero-Tek International
> Aberdeen Proving Ground Tower Road
> 1860 W. Gee Street, Bldg. 315
> Aberdeen Proving Ground, MD  21005. [2]

The notice stated the charging party was Williams.  It also stated, "Within 45-60 days a perfected charge will be forwarded to you for a complete response," and it noted, no action was required of Tero Tek at that time.  (*Id.* Ex. 7, EEOC Notice.)  The evidence before the Court does not indicate whether a perfected charge was ever sent to Tero Tek.

The company's employees are union members whose employment is governed by a collective bargaining agreement ("CBA").  Under the CBA, any layoffs would be made according to seniority, regardless of the job held by an employee.  In March 2010, Tero Tek was notified by ATC it must reduce the number of employees working on the welding contract Tero Tek had with ATC since July 2005.  After the company announced which employees would be laid off, Williams went to the home of one such employee, Aaron Johnson, and told Johnson he should not be subject to layoff under the CBA.  Doss considered Williams's advice to Johnson to be incorrect under the CBA and viewed Williams's behavior as "highly inappropriate and . . . not in the best interests of Tero Tek."  Doss decided Williams should no longer be in a supervisory position and demoted him to the position of experimental welder, while promoting Nelson Webster, an African American, to the position of experimental welder leader. (Doss Aff. ¶¶ 14-18; Pl.'s Opp. Ex. 8, Def.'s Ans. Interrog. No. 4.)

---

[2] According to Tero Tek's answers to interrogatories, the proper address for William Aldrich was 1860 W. Gee St., Pahrump, NV 89060.  This seems to be a private address.  The December 24, 2009, letter from Aldrich to Williams shows a return address for Tero Tek's corporate office in Delano, California.

4

Williams was demoted on March 22, 2010, and the next day, Doss informed the other employees of Williams's demotion and Webster's promotion. Later in the day on March 23, Williams said he was feeling ill and went home. He did not return to work at Tero Tek. (Doss Aff. ¶¶ 18-19; Def.'s Reply, Ex. B, Doss 2nd Aff. ¶ 12, ECF No. 54.) On April 7 and 8, Williams emailed to Doss a copy of a doctor's note that indicated Williams could return to full work status on May 10, 2010. (Pl.'s Opp. Ex. 9.) On April 19, Williams's doctor indicated he should be placed on an off-work status for one month. Williams emailed a copy of this second note to Tony Armideo, the union representative, on April 20. (*Id.* Ex. 10.) Williams understood this to mean he should be off from work until May 30. (Pl.'s Opp. 5.) The evidence before the Court does not show whether the second note was sent to Doss.

Pursuant to the National Industrial Security Program Operating Manual and Army regulations, Tero Tek reported the peace order incident to DISCO on April 7, 2010. (Def.'s Mot. Summ. J. Ex. 8; Def.'s Reply Ex. D, Regan Aff. ¶¶ 4, 8.) In response, DISCO on April 9, 2010, directed that information be submitted within 30 days, i.e., by May 9, including a current electronic Questionnaire for Investigation Processing ("e-QIP"). (Def.'s Mot. Summ. J., Ex. 9, DISCO Notif.) This direction was received by Tero Tek on April 13, 2010. Doss stated in his affidavit he tried unsuccessfully to contact Williams several times by telephone on April 14, 15, and 16 to tell him about the requirement for an updated security clearance. He further stated he went to Williams's residence on April 19 to give him the security questionnaire but no one answered the door. (Doss Aff. ¶¶ 21-23.) On April 20, by certified mail, Doss sent a letter telling Williams the questionnaire was to be returned by April 30 for his Periodic Reinvestigation and further stating that failure to comply could be cause for cancellation of Williams's security clearance. (Def.'s Mot. Summ. J. Ex. 10, Doss Letter Apr. 20, 2010.)

Doss stated in an affidavit that Tero Tek gives employees subject to reinvestigation a suspense date earlier than the actual suspense date by DISCO because the company needs to review a completed questionnaire to see if any necessary information is missing and, if so, to obtain that information from the employee. Once the questionnaire is complete and all data is entered and verified in e-QIP, the employee must sign the signature pages for transmission to DISCO. Doss stated the April 30 date for Williams to return the questionnaire, rather than the actual suspense date of May 9, was given to Williams due to this company procedure. (Doss 2nd Aff. ¶¶ 6-7.)

Williams believed the request to fill out a security questionnaire was "bogus" since his Periodic Reinvestigation was not due to occur until 2012; he stated he was unable to fill it out because of his illness. He did not request an extension of time, fill out the questionnaire, or communicate with Tero Tek about it. (Def.'s Mot. Summ. J., Ex. 11, Williams Dep. 149:13-22; 163:8—165:22; 178:14-15, Apr. 29, 2011; Def.'s Reply, Ex. B, Doss 2nd Aff. ¶ 8.) On May 4, 2010, Doss wrote to Williams and informed him his secret security clearance was suspended, effective the same day, because Williams did not comply with the instructions in the April 20 letter. (Def.'s Mot. Summ. J., Ex. 12, Doss Letter May 4, 2010.) On May 10, DISCO notified Tero Tek of a "loss of jurisdiction" as to Williams, which means he no longer had his security clearance and he could not be employed by Tero Tek at ATC. (*Id.* Ex. 13, DISCO doc.; Doss Aff. ¶ 27.) On May 12, Doss wrote to Williams again, this time informing him that, because of the loss of Williams's security clearance, he no longer met the requirements of the welding contract under which Tero Tek was working at ATC, and, therefore, his employment was terminated effective that day. (*Id.* Ex. 15, Doss Letter May 12, 2010.)

On June 29, 2010, the EEOC dismissed Williams's discrimination charge and issued a notice of right to sue. This notification was sent to the same address as was the initial

notification.  (Pl.'s Opp., Ex. 15, EEOC Dismissal.)  On September 2, 2010, Denise Regan wrote the EEOC, requesting a copy of Williams's original charges against Tero Tek for the reason that the company never received the original paperwork, "but by luck . . . did receive the Dismissal and Notice of Rights form."  In addition, Regan pointed out that the address for Tero Tek on the dismissal form was incorrect and noted the correct addresses for both the corporate office and the Maryland location:

>    Corporate Office – California
>    Tero Tek International, Inc.
>    William R. Aldrich – President
>    P.O. Box 310
>    1408 South Lexington Street
>    Delano, CA  93216-0310
>
>    Maryland Location
>    Tero Tek International, Inc.
>    Jerry L. Doss – Program Manager
>    P.O. Box 769
>    Building 315 Tower Drive – Welding Shop
>    Aberdeen Proving Grounds, MD  21005

(*Id.* Ex. 16, Regan Letter Sept. 2, 2010.)

Doss stated in an affidavit he was unaware of Williams's EEOC charge before Williams was demoted or terminated.  (Doss 2nd Aff. ¶¶ 11-12.)  Regan stated in an affidavit she was unaware of Williams's EEOC charge before she reported the peace order against him to DISCO. She further stated she reviewed the regulations to ensure the peace order needed to be reported. (Def.'s Reply, Ex. D, Regan Aff. ¶ 8.)  No evidence before the Court indicates the initial EEOC notification was returned to the EEOC.

Williams testified in his deposition that Doss had said he did not like the fact that Williams and Terry were dating and told him Terry should have been with a lawyer instead of Williams.  (Pl.'s Opp., Ex. 4, Williams Dep. 47:13-22, Apr. 29, 2011, ECF No. 51.)  Doss testified he became aware of Williams's and Terry's relationship after they began living

7

together; he called them into his office and told them he was not happy about it. Doss felt it was not a good idea for a secretary who handles time, payroll, and leave records as well as security clearances to be involved with an employee. He also stated that, besides the issue of a personal relationship affecting the workplace, he did not have a problem with Terry and Williams having a personal relationship. (*Id.* Ex. 2, Doss Dep. 17:6—18:2; 21:16-20.)

As evidence of Doss's intent to discriminate against him, Williams provides, in opposition to Tero Tek's motion for summary judgment, an exhibit entitled, "application to live in Elkton, MD," that Williams says was left on his desk (Pl.'s Opp. Ex. 3, ECF No. 50),[3] but offers no evidence that Doss was in any way connected with it. Williams also alleged in his amended complaint that Mark Lee was given access to a company car, Lee's fuel costs were compensated, Lee was given company credit cards, Lee was supplied with a company cell phone, and Lee and his family were provided with a paid vacation to Hawaii; Williams alleged he was not given any of those same benefits. (Am. Compl. ¶¶ 18-20, ECF No. 17.) Doss stated in an affidavit that all employees worked under the same sick leave and annual leave policies and that no employees were given extra benefits or denied benefits because of race. Further, he stated Lee, Tolbert, and Williams received the same compensation and same sick leave and annual leave. Also, Doss stated Lee was provided a truck because the group he supervised worked at the firing ranges rather than the main shop, and the truck was needed to transport Lee and his crew to the work sites; Tolbert and Williams were not provided with company trucks because their work in the welding shop did not require transportation to perform their jobs. Additionally, Doss stated Williams was provided with a Tero Tek credit card, but it was taken from him after he used it to buy personal items. (Doss Aff. ¶¶ 29-31, ECF No. 45.) Williams has provided no evidence as to company cell phones or fuel costs. Doss stated in a second

---

[3] The "application" is crude and offensive.

affidavit that Lee was never given a trip to Hawaii by Tero Tek.  (Doss 2nd Aff. ¶ 3, ECF No. 54.)

## II. *Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).  The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment.  *Id.* at 252.  The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1).  Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit.  Rule 56(c)(4).

## III. *Exhaustion*

Although the Court notes that Williams has not provided evidence of exhaustion of administrative remedies for Count One, which alleges racial discrimination in violation of

Title VII because of his demotion and termination, it is also evident that Tero Tek has not claimed lack of exhaustion, focusing instead on the merits of the various claims. Consequently, this defense is deemed waived. *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 n.6 (1984) (statutory requirement of exhaustion by timely filing of EEOC charge under 42 U.S.C. § 2000e-5(e) subject to waiver and equitable tolling). No exhaustion requirement is applicable to Count Two under 42 U.S.C. § 1981, and none is applicable to Count Three alleging retaliation for engaging in protected activity, *see Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992) (holding Title VII plaintiff who had not raised in her administrative proceedings issue of retaliation due to filing EEOC charge could nevertheless raise issue for first time in federal court).

## IV. Analysis

### A. Racial Discrimination – Counts One and Two

Counts One and Two are analyzed identically on their merits. Thus, where the focus is on disparate treatment due to racial discrimination, evaluation of the evidence is the same regardless of whether the claim is brought under Title VII or under 42 U.S.C. § 1981. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 n.4 (4th Cir. 2005) (citing *Bryant v. Aiken Reg. Med. Ctrs. Inc.*, 333 F.3d 536, 545 n.3 (4th Cir. 2003)); *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004).

Williams has alleged his demotion, his termination, and his allegedly unfavorable terms and conditions of employment were based upon racial discrimination by Tero Tek. Because Williams has no direct proof or even circumstantial evidence of discriminatory intent, he may establish a *prima facie* case of discrimination by relying upon the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Considering first his demotion, Williams may show a *prima facie* case by demonstrating the following elements:

(1) he is a member of a protected class; (2) he was qualified for his job and his performance was satisfactory; (3) despite his qualifications, he was demoted; and (4) his former position remained open to similarly qualified applicants after his demotion. *Love-Lane*, 355 F.3d at 787. Williams can certainly establish the first and third elements, and the Court assumes without deciding he can establish the second element. However, he cannot establish the fourth element. Not only did his former position not remain open, but it was filled by someone from his same protected class. Moreover, he has not shown that any similarly situated employees outside of his protected class were disciplined differently for similar conduct. Consequently, his claim of racial discrimination in his demotion fails.

His termination claim follows a similar analysis. Williams must show (1) he is a member of a protected class, (2) he was qualified for his job and his job performance was satisfactory, (3) despite his qualifications and performance, his employment was terminated, and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*). Again, Williams can easily establish the first and third elements, and the Court assumes without deciding he can prove the second element. Regardless, he offers no evidence or argument at all on the fourth element. Thus, his claim of racial discrimination in his termination fails.

Williams's complaint of racial discrimination with regard to the terms, conditions, and benefits of his employment fares no better. He offers no admissible evidence that these aspects of his employment differed significantly from the terms, conditions, and benefits of employment enjoyed by similarly situated employees outside of his protected class. Consequently, Tero Tek will be granted summary judgment on Counts One and Two.

B. *Retaliation – Count Three*

In the last remaining count, Williams claims the adverse actions of Tero Tek, which the Court understands to be his demotion and termination, were in response to his protected activity of filing an EEOC charge. A plaintiff may establish a *prima facie* case of retaliation by proving three elements: (1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) the adverse employment action is causally linked to the protected activity. *See EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005). The first two elements are indisputable. The third is questionable given Tero Tek's stated lack of knowledge as to the existence of Williams's EEOC charge before it took adverse action against him. But the Court assumes, for the purpose of deciding this motion, that the February 2, 2010, letter from the EEOC was delivered in due course to Tero Tek and was received by the company by February 5, 2010. Based on that assumption, the time between notification to Tero Tek and adverse employment action to Williams was roughly a month and a half for the demotion and roughly three months for the termination. A legal presumption then arises that Williams's protected activity and the adverse employments actions are causally related for the purpose of establishing a *prima facie* case. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (noting four-month period in *Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir. 1989), between protected activity and adverse employment action was found to constitute causal nexus)).

Once a *prima facie* case has been established, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment actions. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000). If a defendant offers a legitimate, nondiscriminatory reason, then the burden shifts back to the plaintiff to show "'by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Reeves*, 530 U.S. at 143 (quoting *Texas*

*Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  This final inquiry "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

Tero Tek has offered as its reason for Williams's demotion that Williams incorrectly and inappropriately advised Aaron Johnson as to his layoff rights under the CBA.  Doss indicated he believed Williams's action was not in Tero Tek's best interests and, therefore, made him unsuitable for a supervisory position.  This articulated basis for Williams's demotion suffices as a legitimate, nonretaliatory reason.  *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004) (employer required to proffer legitimate, nonretaliatory reason for adverse employment action if plaintiff establishes a *prima facie* case).  As for Williams's termination, Doss stated that Williams's failure to maintain his secret security clearance meant that Williams could no longer qualify as an employee on the contract Tero Tek had with ATC.  This, too, is a legitimate, nonretaliatory reason.  It is now up to Williams to show, by a preponderance of the evidence, that these reasons for his demotion and termination were pretextual.  In this regard, the Fourth Circuit has said that an employer's mere knowledge of the employee's protected activity is insufficient "'evidence of retaliation to counter substantial evidence of legitimate reasons' for adverse personnel action against that employee." *Carter*, 33 F.3d at 460 (citing *Williams*, 871 F.2d at 457).  A plaintiff can establish the pretextual nature of the employer's stated reason by showing the employer's explanation is unworthy of credence or by providing circumstantial evidence sufficiently probative of retaliation.  *Price*, 380 F.3d at 212.

Williams's case falters at this juncture because the circumstantial evidence he offers is not sufficiently probative of retaliation.  He points to an email message from Linda Madsen, CIC, Senior Account Manager at Whitaker Davis Insurance Services, on April 16, 2010, to Denise Regan at Tero Tek's corporate office, in which Madsen stated, "Matt agreed that when/if

Troy's employment is terminated, it will most likely become work-related if it isn't already in his mind!s [sic]." (Pl.'s Opp. Ex. 17, Madsen Email Apr. 16, 2010.)[4]  From this, Williams argues that Tero Tek was already contemplating discharging him (Pl.'s Opp. 11), and perhaps it was, but that does not prove that Tero Tek's potential interest in terminating his employment was related to his EEOC activity.  At the point this message was sent, Williams had been away from work for several weeks after having been demoted for acting contrary to the best interest of his employer; he was on medical leave because it was claimed that his anxiety and stress were related to his work.  It is reasonable to infer, to the extent it is permissible to do so from a communication not originating with Tero Tek, that the company could foresee a time in the near future when Williams would exhaust his medical leave and not return to work.  This inference is reinforced by the message's obvious emphasis on issues pertaining to health and insurance benefits.

Williams also relies upon the reporting by Tero Tek of the peace order incident to DISCO as evidence of retaliatory intent.  According to Doss, this kind of report should be made within 24 hours after being notified of or becoming familiar with a reportable incident. (Pl.'s Opp., Ex. 2, Doss Dep. 51:10-22.)  Thus, the report could have been made as soon as Tero Tek was aware of the peace order after it was entered on January 5, 2010.  Williams offers no evidence to suggest that his peace order should not have been reported to DISCO or that Tero Tek had discretion whether to report it.  Thus, he apparently concedes that Tero Tek was required to report it to DISCO.  But he faults Tero Tek for not reporting it until April 7, 2010, when he was out on medical leave.  (Pl.'s Opp. 11-12.)  Regan stated in her affidavit that her delay in reporting was due to several causes, including her being busy with the company's year-end responsibilities and with her appointment as executor of her grandmother's estate.  (Def.'s Reply

---

[4] The identity of "Matt" is unknown to the Court.

¶ 8.)  However, regardless of when the peace order was reported, it would have inevitably triggered a DISCO reinvestigation, and whether or not Williams's periodic reinvestigation was not routinely due until 2012, he would have been required to engage in the process set up by DISCO for maintaining his security clearance.  When notified by Doss of the need to attend to his security clearance, Williams remained incommunicado, despite his communication during the same time period with Doss about his doctor's notes in support of his medical leave.  It is not reasonable to infer that the reporting of Terry's peace order against Williams—something the company was required to do—was retaliation for his EEOC activity.

Williams additionally argues that Doss waited at least eleven days to notify him that he was being reinvestigated, noting the date of April 20, 2010, on the letter to Williams.  (Pl.'s Opp. 12.)  Doss's affidavit establishes, however, that he received the DISCO notification on April 13 and he began trying to contact Williams the next day.  (Doss Aff. ¶¶ 22, 23.)  When his various efforts at telephonic and personal contact failed, he sent Williams the April 20 letter.  (*Id.* ¶ 24.)  No evidence before the Court supports Williams's contention that Doss waited eleven days before notifying him of the DISCO reinvestigation.

Another argument by Williams is that the April 20 letter "misrepresented critical information," including a governmental requirement that the employee must be notified that e-QIP is available and that the information can be entered online.  (Pl.'s Opp. 12.)  To support this contention, Williams provides a page taken from an unidentified source stating, in part, "Notification Letter to employee that e-QIP is available must inform the employee that the SF 86 is subject to review and the reviewer shall review the application solely to determine its adequacy and to ensure that necessary information has not been omitted."  (Pl.'s Opp. Ex. 22.)  The Court does not accept this as admissible evidence given its lack of provenance, and the argument fails for lack of support.

Williams also argues that Doss "misrepresented" the suspense date for getting the information to DISCO by April 30 when DISCO's actual suspense date was May 9. (Pl.'s Opp. 12-13.)  Doss's affidavit explaining why employees are given earlier suspense dates, for the reason of ensuring the information is complete, explains why he specified April 30.  Based on this evidence of the company's standard procedure, and of its being followed in Williams's case, it is not reasonable to infer that Doss misrepresented the date by which Williams was to return his questionnaire to Tero Tek.

Williams's last bit of evidence that he asserts is evidence of retaliation is that he was not able to complete the questionnaire in the time frame provided by Tero Tek, and he comments that Tero Tek could have requested an extension due to Williams's medical leave status.  (Pl.'s Opp. 13.)  This argument ignores the fact that Williams failed to communicate at all with Doss about the reinvestigation.  If time was the issue, Williams could have requested an extension, but he remained unresponsive to Doss's letter.  Tero Tek's failure to request an extension for Williams when Williams himself stayed silent is not evidence of retaliation.  Consequently, the Court concludes Williams has failed to establish that Tero Tek's reasons for demotion and termination were pretextual and, accordingly, concludes Williams has failed in his ultimate burden of persuasion that these adverse employment actions were motivated by discriminatory intent. Tero Tek is, therefore, entitled to summary judgment on Count Three.

## V. *Conclusion*

Tero Tek has demonstrated that this case presents no genuine dispute to material fact and that it is entitled to judgment as a matter of law.  A separate order will issue accordingly.

DATED this 24<u>th</u> day of February, 2012.

                                                  BY THE COURT:

                                                  _____/s/_____

                                                  James K. Bredar
                                                  United States District Judge